UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1002

VINCENT CAMASTRO,

                Plaintiff - Appellant,

        v.

CITY OF WHEELING; BARRY CROW, individually and in his
capacity as a City Councilman,

                Defendants - Appellees.

Appeal from the United States District Court for the Northern
District of West Virginia, at Wheeling.   Frederick P.
Stamp, Jr., Senior District Judge.   (5:06-cv-00069-FPS)

Argued: March 24, 2009              Decided: May 7, 2009

Before DUNCAN and AGEE, Circuit Judges, and David A. FABER,
Senior United States District Judge for the Southern District of
West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

Peter Michael Suwak, Washington, Pennsylvania, for Appellant.
Bradley K. Shafer, STEPTOE & JOHNSON, LLP, Wheeling, West
Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Vincent Camastro appeals the district court's grant of summary judgment against him on First Amendment retaliation claims that he brought against the City of Wheeling under 42 U.S.C. § 1983.  For the reasons discussed below, we affirm.

I.

Appellant Vincent Camastro ("Camastro") and the City of Wheeling ("City") have long had a contentious relationship.  The litigation that formed the basis of this appeal grew out of Camastro's unsuccessful attempt in 1994 to obtain a zoning variance to construct a four-bay carwash on a piece of property he owned.  When the City denied his request for a variance, Camastro responded by putting up signs on his lot.  The signs read as follows:

> THE CITY OF WHEELING HAS CHEATED ME. THEY STOPPED ME
> FROM BUILDING A CAR WASH. I WAS CENSORED AT CITY
> COUNCIL JULY 5TH AND NOT ALLOWED TO SPEAK. LOOK AT
> WHAT THEY ARE DOING TO WHEELING. I WAS STOPPED FROM
> PRESENTING EVIDENCE TO A GRAND JURY AGAINST CORRUPT
> CITY OFFICIALS.

JA 150a (capitalization in original).[1]

---

[1]In addition to the signs, Camastro launched an aggressive litigation campaign, filing at least eleven lawsuits against the City regarding the carwash, a billboard business, and a proposed video lottery café.  See JA 160a-61a.

2

Camastro admits that he never applied for the permits required by City ordinance to erect the signs. In 2001, the City sued Camastro in state court seeking enforcement of the ordinance and removal of the signs. In 2008, the court finally granted the City's request and ordered Camastro to remove the signs. City of Wheeling v. Camastro, No. OI-C-425 (Cir. Ct. of Ohio County, W. Va. Feb. 6, 2008) (opinion reproduced at JA 383a-84a).

In the interim, however, Camastro alleges that on two specific occasions the City retaliated against his exercise of his First Amendment right to erect the signs. First, Camastro points to comments made by Wheeling City Councilman Barry Crow that were reported in the local newspaper and covered by local television media. Crow made these statements on June 10, 2004, while litigation over the signs was still pending in state court. In reference to the length of time the City's request to remove the signs had gone unaddressed by the court, Crow was quoted as saying: "How many years does it take? . . . I want the city to take them down and if he wants to, he can take us to court." JA 185a. Camastro asserts that, approximately a week after Crow's statement, his signs were torn down by unknown individuals. JA 286a-87a. Camastro acknowledges that, even prior to Crow's statement, the signs had been torn down approximately twenty times. JA 285a-86a. And, as he had done

3

every other time the signs were torn down, Camastro replaced each sign with another bearing the same message. JA 290a; Br. of Appellant at 8-9.

Camastro's second claim is that his First Amendment rights were violated by a letter sent to him from the City Solicitor. The letter, dated August 19, 2005, stated:

> Mr. Camastro:
>
> Please do not misquote me again. I am referring to your August 17, 2005 correspondence attached. I attempted to be helpful to you and only stated that your current project at 2076 Nation Road would be reviewed separately from the belated Lumber Avenue incomplete application submitted in the later part of the afternoon on Tuesday, August 16, 2005.
>
> Please be advised that due to your outright inaccurate misstatements, do not contact this department by telephone or in person again. I will also not respond to the other false allegations and requests made by you in correspondence and shall advise other City of Wheeling Departments to similarly respond.
>
> Sincerely,
> [City Solicitor]

JA 151a. It is undisputed that Camastro continued to contact the City in spite of the letter. For example, Camastro testified that he spoke with City administrator Tom Conley regarding a video lottery café project. JA 189a-90a. Camastro also admitted that the City Solicitor provided him assurances that the City would not interfere with his "right to communicate with city departments." JA 148a.

4

On June 7, 2006, Camastro filed suit in federal district court in the Northern District of West Virginia primarily alleging First Amendment violations by the City and Councilman Crow under 42 U.S.C. § 1983. The district court granted summary judgment in favor of the defendants, holding that neither Barry Crow nor the City Solicitor, acting alone, had final policy-making authority for the City and that, as a result, neither Crow's statement nor the City Solicitor's letter were actionable under § 1983.[2] This appeal followed.

## II.

We have jurisdiction over this appeal from a final decision of the district court under 28 U.S.C. § 1291. We review de novo the district court's grant of summary judgment, taking the facts and drawing all permissible inferences in the light most favorable to non-moving party. Steelman v. Hirsch, 473 F.3d 124, 127 (4th Cir. 2007).

[2]The district court declined to exercise supplemental jurisdiction over a separate claim brought under a state civil rights statute, and Camastro does not pursue that claim here.

III.

Camastro asserts First Amendment retaliation claims based on Councilman Crow's statement and on the City Solicitor's letter. Neither constitutes actionable conduct.

It is well settled that "[t]he First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). "However, not every reaction made in response to an individual's exercise of his First Amendment right to free speech is actionable retaliation." Id. Accordingly, we have held that a First Amendment retaliation claim brought under 42 U.S.C. § 1983 must include three elements:

> First, the plaintiff must demonstrate that his or her speech was protected. Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech. Third, the plaintiff must demonstrate that a causal relationship exists between [the] speech and the defendant's retaliatory action.

Id. (citations omitted) (emphasis added). With respect to the second prong, a plaintiff must show that the retaliatory conduct "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Constantine v. Rectors and

6

Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (citations and punctuation omitted).

Further, when the alleged retaliatory act is itself in the form of speech, "a public official's own First Amendment speech rights are implicated," such that "in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow," such speech is not actionable retaliatory conduct. Suarez, 200 F.3d at 687.

## A.

We turn first to Councilman Crow's statement. On June 10, 2004, while litigation over the signs was pending, the following statement was attributed to Crow in the local media: "I want the city to take them down and if he wants to, he can take us to court." JA 185a. Because Crow's comment constitutes speech, we must first determine whether it constitutes "a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow." Suarez, 200 F.3d at 687. We conclude that it does not. On its face, the statement is no more than that of one councilman expressing his personal desire that the city take the signs down. The councilman is not announcing a new City policy or issuing an ultimatum. He is expressing a personal view that the City should engage in self-help, not exhorting any individual to do anything.

7

Even if the statement could be read as intimating imminent sanction, however, it would still fail to constitute actionable retaliatory conduct. Crow's statement alluded to nothing more than removal of the signs. The City <u>was already seeking</u> precisely that relief in its then-pendent suit. As such, even if a reasonable person could interpret the statement as threatening punishment in the form of removal of the signs, it would bring little additional leverage to bear, and thus would not "deter a person of ordinary firmness from the exercise of First Amendment rights." <u>Constantine</u>, 411 F.3d at 500 (citations and punctuation omitted).

B.

We turn next to Camastro's claim of "retaliation for Plaintiff's right to petition." <u>See</u> Br. of Appellant at 2. Camastro bases this claim on the letter from the City Solicitor, which read in part:

> Please be advised that due to your outright inaccurate misstatements, do not contact this department by telephone or in person again. I will also not respond to the other false allegations and requests made by you in correspondence and shall advise other City of Wheeling Departments to similarly respond.

JA 151a. Camastro reads this letter as "cutting off Plaintiff's access to all of the departments in the City-County Building." Br. of Appellants at 35. Nevertheless, Camastro acknowledges that, even before he filed a complaint in this case, the City

8

Solicitor provided him assurances that the City would not interfere with his "right to communicate with city departments." JA 148a. And Camastro admits to having continued contact with City officials even after receiving the letter. As such, it is plain that the City Solicitor's letter, coupled with her subsequent assurances that the City would not restrict Camastro's access to City departments, falls far short of the sort of retaliatory conduct that would "deter a person of ordinary firmness from the exercise of First Amendment rights." Constantine, 411 F.3d at 500 (citations and punctuation omitted). This conclusion is especially easy to draw given that the City Solicitor's conduct failed to halt Camastro's ongoing contact with the City. See id. ("[While not dispositive,] the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity.").

IV.

Having concluded that Camastro's retaliation claims must fail for the reasons stated above, we need not consider whether the claims might also fail on myriad other grounds, including those raised in the briefs and the opinion below.

For the foregoing reasons the decision below is

AFFIRMED.

9